## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAIN STREET AMERICA ASSURANCE COMPANY,** | ) | |
| 4601 Touchton Road East, Suite 3400, | ) | |
| Jacksonville, Florida 32246 | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | |
| **v.** | ) | **NO. _____** |
| | ) | |
| **FRIEL PLASTERING & STUCCO, INC.,** | ) | |
| 155 Coopertown Road, | ) | |
| Haverford, PA 19041 | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Main Street America Assurance Company ("Main Street"), by and through its undersigned counsel, hereby files this Complaint seeking declaratory relief, and avers as follows:

### PARTIES

1.     Main Street is a corporation organized and existing under the laws of the state of Florida, and has its principal place of business at 4601 Touchton Road East, Suite 3400, Jacksonville, Florida 32246.

2.     Upon information and belief, defendant Friel Plastering & Stucco, Inc. ("Friel") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and has its principal place of business at 155 Coopertown Road, Haverford, Pennsylvania 19041.

### JURISDICTION AND VENUE

3.     Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

4. This Court has jurisdiction over this matter under the Declaratory Judgment Act, 28 U.S.C. § 2201; and under 28 U.S.C. § 1332, as the citizenship of the parties is diverse and the amount in controversy exceeds $75,000, as set forth herein.

5. Venue is proper in the United States District Court for the Eastern District of Pennsylvania because the contract at issue in the instant litigation was entered into in the Eastern District of Pennsylvania.

## THE POLICY

6. Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

7. Main Street issued three policies of businessowners' insurance (collectively, the "Policies") to "Friel Plastering & Stucco, Inc.," all of which bore Main Street Policy Number MPU5515L, and which had effective dates of January 1, 2014 to January 1, 2015 (the "2014 Policy"); January 1, 2015 to January 1, 2016 (the "2015 Policy"); and January 1, 2016 to January 1, 2017 (the "2016 Policy").

8. Copies of the relevant 2014 Policy, the 2015 Policy, and 2016 Policy documents are attached hereto as Exhibits "1" through "3," respectively.

9. Friel is the named insured on the Policies. *See* Ex. 1 at 2014 POLICY 02; Ex. 2 at 2015 POLICY 05; and Ex. 3 at 2016 POLICY 09.

10. Subject to the terms, conditions, and exclusions in the Policies, the Policies provided, *inter alia*, a Liability and Medical Expenses Policy Limit of $1,000,000; a Products/Completed Operations Aggregate Policy Limit of $2,000,000; and a General Aggregate Policy Limit of $2,000,000. *See id.*

11. The Declarations Pages classify the named insured—Friel—as a "Corporation." *See id.*

12.    The Policies thus define "Insured," in pertinent part, as:

## C. Who Is An Insured

1. If you are designated in the Declarations as:

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

*See* Ex. 1 at 2014 POLICY 17.

13.    The Policies further provide that:

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

\*        \*        \*

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

3

*See id.*

14.     The Policies provide Businessowners Liability Coverage through Policy Form BPM P 2 (12/07). *See* Ex. 1 at 2014 POLICY 08.

15.     The insuring agreement for Coverage A.1 – Business Liability provides, in pertinent part, as follows:

> **A. Coverages**
>
> **1. Business Liability**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> (1) The amount we will pay for damages is limited as described in Paragraph **D.** – Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and
>
> (2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

*See id.*

16.     The Policies' liability coverage further provides that:

> b. This insurance applies:
>
> (1) To "bodily injury" and "property damage" only if:

4

(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(b) The "bodily injury" or "property damage" occurs during the policy period; and

(c) Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

(2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

*See id.*

17.     The Policies further provide that:

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

5

> (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
>
> (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
>
> (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

*See id.* at 2014 POLICY 08-09.

18.     The Policies define "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See id.* at 2014 POLICY 21.

19.     The Policies define "Property Damage," in relevant part, as follows:

> 17. "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*See id.*

20.     The Policies exclude coverage for "Contractual Liability," such that there is no coverage under the Policies for:

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*See id.* at 2014 POLICY 10.

21.     The Policies define "Insured Contract," in pertinent part, as follows:

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

*See id.* at 2014 POLICY 57.

22.    The Policies also exclude coverage for damage to certain classes of property, such

that there is no coverage under the Policies for "property damage" to:

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

            *      *      *

8

> Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.
>
> Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

*See id.* at 2014 POLICY 13-14.

23.     The Policies define "products-completed operations hazard," in pertinent part, as

follows:

> **16.** "Products-completed operations hazard":
>
> a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
>   **(1)** Products that are still in your physical possession; or
>
>   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>
>     **(a)** When all of the work called for in your contract has been completed.
>
>     **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>
>     **(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.
>
>     Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
>
>   The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.
>
> **b.** Does not include "bodily injury" or "property damage" arising out of:
>
>   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or
>
>   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

*See id.* at 2014 POLICY 21-22.

24.     The Policies define "your work" and "your product" as follows:

> 21. "Your product":
>     a. Means:
>         (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>             (a) You;
>             (b) Others trading under your name; or
>             (c) A person or organization whose business or assets you have acquired; and
>         (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
>     b. Includes:
>         (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
>         (2) The providing of or failure to provide warnings or instructions.
>
>         c. Does not include vending machines or other property rented to or located for the use of others but not sold.
> 22. "Your work":
>     a. Means:
>         (1) Work or operations performed by you or on your behalf; and
>         (2) Materials, parts or equipment furnished in connection with such work or operations.
>     b. Includes:
>         (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>         (2) The providing of or failure to provide warnings or instructions.

*See id.* at 2014 POLICY 22-23.

25.     The Policies also exclude coverage for "property damage" to "your product" and "your work," such that there is no coverage under the Policies for:

l. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

m. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

*See id.* at 2014 POLICY 14.

26.     The Policies also exclude coverage for property damage to "impaired property,"

such that there is no coverage for:

n. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

*See id.*

27.     The Policies define the term "impaired property" as follows:

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   (1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

   (2) Your fulfilling the terms of the contract or agreement.

*See id.* at 2014 POLICY 20.

28.     The Policies also contain an exclusion for liability arising from "bodily injury" or

"property damage" that is caused by fungi or bacteria, such that there is no coverage for:

The following provisions are added to **Section II – Liability:**

A. The following exclusion is added to Paragraph **B.1., Exclusions – Applicable To Business Liability Coverage:**

   t. Fungi Or Bacteria

   (1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   (2) Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

   This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

12

*See id.* at 2014 POLICY 56.

29.    The Fungi or Bacteria Exclusion defines "fungi" as "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi." *Id.*

30.    The Policies also contain an exclusion for "Exterior Insulation and Finish Systems," which provides that there will be no coverage for:

> **Section II – Liability** is amended as follows:
>
> A.  This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:
>
> 1.  The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or
>
> 2.  "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

*See id.* at 2014 POLICY 40.

31.    The Policies define the term "Exterior insulation and insulation system" as follows:

B. The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;
2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;
3. A reinforced or unreinforced base coat;
4. A finish coat providing surface texture to which color may be added; and
5. Any flashing, caulking or sealant used with the system for any purpose.

*See id.*

32.     The Policies also contain a provision permitting Main Street to seek reimbursement from its insured for defense costs it expends on behalf of an insured in the event it is determined that none of the claims in the Underlying Action are covered:

The following is added to **Section II — Liability** Paragraph **A. Coverages:**

If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

*Id.* at 2014 POLICY 58.

## THE UNDERLYING ACTION

33.     Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

34.     University Realty, LP ("University Realty") commenced a lawsuit (the "Underlying Action") by filing a Praecipe for a Writ of Summons in the Court of Common Pleas of Philadelphia County on or about October 2, 2018. *See* Writ of Summons, attached hereto as Exhibit "4."

35.     The defendants identified in the Writ of Summons included Friel; Top Gun Enterprises, LLC ("Top Gun"); and D&G Masonry, Inc. ("D&G").

36.     Service of the Writ of Summons was effected on Friel on or about October 22, 2018. *See* Affidavit of Service, attached hereto as Exhibit "5."

37.     On November 26, 2018, University Realty filed its Complaint in the Underlying Action against Friel, Top Gun, and D&G. *See* Complaint, attached hereto as Exhibit "6."

38.     According to the Complaint, on September 25, 2015, University Realty entered into a contract with Top Gun, whereby Top Gun agreed to serve as the general contractor for the construction of a building at 4525 Walnut Street, Philadelphia, Pennsylvania 19139 (the "Building"). *See* Ex. 6 at ¶¶ 6-10.

39.     The Complaint further alleges that Top Gun entered into subcontracts with D&G to install brick veneer on the Building; and with Friel to perform stucco work on the Building. *Id.* at ¶¶ 11-12.

40.     The work performed by D&G and Friel was completed in 2016. *Id.* at ¶ 13.

41.     The Complaint further alleges that on or about May 17, 2018, University Realty entered into an agreement of sale to sell the Building. *Id.* at ¶ 14.

42.     According to the Complaint, the pre-sale inspections of the Building revealed issues with the brick and stucco, including, *inter alia*, that the stucco walls were stained with moisture and there was moisture in the substrate. *Id.* at ¶¶ 15-19.

43.     The Complaint also claims that further inspections indicated that there was damage to the stucco work and to the surrounding areas of the Building. *Id.* at ¶¶ 20-26; *see also id.* at ¶¶ 29-34.

44.     Specifically, the Complaint alleges that there were elevated moisture readings in the stucco-clad areas; water leaks at joints near the roof; improperly located expansion and control joints; and "sticking" of the water-resistant barrier to the wood substrate. *Id.* at ¶¶ 29-30.

45.     The Complaint further alleges that "the stucco system was not installed according to the Building Code and industry and manufacturer's guidelines." *Id.* at ¶ 31.

46.     The Complaint alleges that the expert retained by University Realty concluded that a complete removal and replacement of the brick and stucco cladding system was necessary. *Id.* at ¶ 32.

47.     According to the Complaint, the sale for the Building was terminated due to the alleged faulty workmanship and resultant damage. *Id.* at ¶¶ 27-28.

48.     Specifically with respect to Friel, the Complaint alleges a single claim for "Negligence." *Id.* at ¶¶ 44-48.

49.     The single claim against Friel alleges that Friel had a duty of care to perform its work in a good and workmanlike manner; to perform its work in accordance with applicable building codes; to coordinate its work with other contractors; to schedule its work in a manner that assured the proper integration of the building systems; to properly supervise its work; to use only licensed subcontractors; and to furnish and supply proper materials. *Id.* at ¶ 45.

50.     The Complaint alleges that Friel violated these duties of care by:

(a)     failing to install the brick veneer in a good and workmanlike manner, according to industry standards, manufacturers guidelines, and according to the Philadelphia building code;

(b)     failing to install the stucco in a good and workmanlike manner, according to industry standards, manufacturers guidelines, and according to the Philadelphia building code;

(c)     failing to properly supervise their respective work and the work of their subcontractors;

16

(d)     failing to use licensed contractors and subcontractors to perform their work;

(e)     failing to coordinate their respective work with the work of subcontractors and others;

(f)     failing to coordinate all of the work;

(g)     failing to supervise their work; and

(h)     failing to install the materials and otherwise perform their work in a good and workmanlike manner.

*Id.* at ¶ 46.

51.     The Complaint claims that these alleged negligent acts caused damage to work on the Building separate from the work that Friel itself installed. *Id.* at ¶ 47.

52.     The Complaint thus seeks damages that include the costs to repair the Building and the loss of profits from the sale of the Building. *Id.* at ¶ 48.

## THE CLAIMS FOR COVERAGE

53.     Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

54.     Following the filing of the Underlying Action, Friel sought coverage for its defense and indemnity in the Lawsuit.

55.     On or about January 18, 2019, Main Street sent a partial disclaimer and reservation of rights to Friel regarding its claim for coverage in connection with the Underlying Action. *See* Exhibit "7."

56.     As set forth in this correspondence, Main Street agreed to assume the defense of Friel subject to a reservation of its rights, and it appointed counsel to defend Friel in the Underlying Action. *Id.*

57.     In that letter, Main Street also alerted Friel to the fact that several exclusions—such as the "Contractual Liability," "Damage To Property," "Damage To Your Work," "Damage To Impaired Property Or Property Not Physically Injured," and "Recall of Products, Work or Impaired Property" exclusions—might preclude coverage for the claims against Friel in the Underlying Action. *Id.*

58.     The letter further indicated that the exclusions for "Fungi Or Bacteria" and "Exterior Insulation And Finish Systems" might apply to the claims in the Underlying Action. *Id.*

59.     Main Street's letter also alerted Friel to the fact that the Policies allowed Main Street to recover attorneys' fees in the event the claims against Friel in the Underlying Action were not covered.  *Id.*

## COUNT I
### For Declaratory Judgment That Main Street Has No Duty To Defend
### Friel in the Underlying Action

60.     Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

61.     For the reasons set forth herein, an actual, justiciable controversy exists between the parties concerning their respective rights and obligations, if any, under the Policies with respect to the Underlying Action.

62.     Specifically, there is a dispute between Main Street and Friel regarding Main Street's obligation, if any, to provide a defense for Friel in connection with the allegations against it in the Underlying Action.

63.     Upon information and belief, Friel believes that it is entitled to a defense from Main Street for the claims asserted against it in the Underlying Action, which Main Street disputes.

64.     Main Street seeks a declaration that it has no duty to defend Friel in connection with the Underlying Action, and that Main Street may therefore withdraw the defense of Friel that Main Street is currently providing in the Underlying Action under reservation of rights.

65.     Pursuant to 28 U.S.C. § 2201, Main Street is entitled to a judicial determination concerning the scope and nature of its rights and other legal relations and obligations, if any, under the Policies with respect to the Underlying Action.

66.     In order to trigger coverage under the Policies, there must be a covered "occurrence." *See* Ex. 1 at 2014 POLICY 08.

67.     The Policies define the term "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 2014 POLICY 21.

68.     Under Pennsylvania law, claims arising out of faulty workmanship are not an "occurrence," and therefore are not covered under a policy of general liability insurance. *See, e.g., Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888 (Pa. 2006); *see also Specialty Surfaces Int'l, Inc. v. Continental Cas. Co.*, 609 F.3d 223 (3d Cir. 2010); *Miller's Capital Ins. Co. v. Gambone*, 941 A.2d 706 (Pa. Super. 2007).

69.     Similarly, allegations of breach of contract or breach of warranty do not set forth a covered "occurrence" under Pennsylvania law. *See, e.g., Erie Ins. Exchange v. Abbott Furnace Co.*, 972 A.2d 1232 (Pa. Super. 2009).

70.     The allegations against Friel in the Underlying Action all arise from alleged faulty workmanship by Friel and/or from water intrusion as a result of said faulty workmanship.

71.     Under Pennsylvania law, the Complaint in the Underlying Action therefore does not allege a covered "occurrence" under the Policies, and there is therefore no coverage under the Policies for Friel with respect to the Underlying Action.

72.     Upon information and belief, the damages alleged in the Underlying Action arise from "property damage" caused by mold, bacteria, or fungi.

73.     Pursuant to the Fungi or Bacteria Exclusion, the Policies therefore do not cover the claims against Friel in the Underlying Action.

74.     Upon information and belief, the Underlying Action seeks damages pursuant to a contractual agreement to which Friel was a party.

75.     Pursuant to Exclusion b., which excludes coverage for "Contractual Liability," the Policies do not cover the claims against Friel in the Underlying Action.

76.     Pursuant to Exclusion k., the Policies do not cover the claims against Friel in the Underlying Action because the "property damage" alleged therein was to the particular part of real property on which Friel or any contractor or subcontractor working directly or indirectly on its behalf was performing operations and arose out of those operations.

77.     Pursuant to Exclusions l. and m., the Policies do not cover the claims against Friel in the Underlying Action because the "property damage" alleged therein was to Friel's "work" and/or "product," as those terms are used in the Policies.

78.     Pursuant to Exclusion n., the Policies do not cover the claims against Friel in the Underlying Action because the "property damage" alleged therein was to "impaired property" or property that has not been physically injured, and arose out of a defect, deficiency, inadequacy or

dangerous condition in Friel's "product" and/or "work," and/or arose out of a delay or failure by Friel or anyone acting on its behalf to perform a contract or agreement in accordance with its terms.

79.     The Policies do not cover the claims against Friel in the Underlying Action because the alleged conduct and/or property damage giving rise to the Underlying Action occurred outside the effective period of the Policies.

80.     Under the terms, provisions, definitions, exclusions, conditions, and limitations of the Policies, Main Street therefore has no duty to defend Friel in connection with the Underlying Action.

81.     Accordingly, Main Street is entitled to a declaration pursuant to 28 U.S.C. § 2201 (1) that Main Street has no duty to defend Friel in connection with the Underlying Action; (2) that Main Street may withdraw the defense it is currently providing to Friel in the Underlying Action; and (3) that because there is no coverage for the claims against Friel, Main Street is entitled to reimbursement of the defense costs it has expended in defending Friel in the Underlying Action.

WHEREFORE, Plaintiff Main Street America Assurance Company respectfully requests that the Court enter an Order:

   (a)   Declaring that Main Street has no duty to defend Friel in the Underlying Action;

   (b)   Declaring that Main Street may withdraw from the defense of Friel in the Underlying Action;

   (c)   Awarding Main Street reimbursement of the defense costs it has expended in defending Friel in the Underlying Action; and

   (d)   Granting Main Street such other and further relief as may be necessary and appropriate under the circumstances.

## COUNT II
### For Declaratory Judgment That Main Street Has No Duty To Indemnify Friel in the Underlying Action

82.    Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

83.    For the reasons set forth above, there are no claims asserted against Friel in the Underlying Action that are potentially covered under the Policies.

84.    Under the terms, provisions, definitions, exclusions, conditions, and limitations of the Policies, Main Street therefore has no duty to indemnify Friel for any of the claims in the Underlying Action, including any cross-claims; and/or in connection with any judgment entered against Friel or for any settlement in the Underlying Action.

85.    Accordingly, Main Street is entitled to a declaration pursuant to 28 U.S.C. § 2201 that it has no duty to indemnify Friel in connection with any judgment or settlement in the Underlying Action.

WHEREFORE, Plaintiff Main Street America Assurance Company respectfully requests that the Court enter an Order:

    (a)    Declaring that Main Street has no duty to indemnify Friel for any judgment or settlement in the Underlying Action; and

    (b)    Granting Main Street such other and further relief as may be necessary and appropriate under the circumstances.

Dated: 4/25/19

POST & SCHELL, P.C.

By _____
BRYAN M. SHAY, ESQ.
PA ID NO. 205953
Four Penn Center, 13th Floor
1600 John F Kennedy Blvd.
Philadelphia, PA 19103
Phone: 215-587-1182
Facsimile: 215-320-4876
*Attorneys for Plaintiff Main Street America*
*Assurance Company*

## CERTIFICATE OF SERVICE

I, Bryan M. Shay, hereby aver that on the date set forth below, I caused a true and correct copy of the foregoing Complaint for Declaratory Judgment to be filed with the Court.  Service of said Complaint was made on all parties in accordance with the applicable Rules of Civil Procedure.

Dated: 4/25/19

POST & SCHELL, P.C.

By _____

BRYAN M. SHAY, ESQ.
PA ID NO. 205953
Four Penn Center, 13th Floor
1600 John F Kennedy Blvd.
Philadelphia, PA  19103
Phone:  215-587-1182
Facsimile: 215-320-4876
*Attorneys for Plaintiff Main Street America
Assurance Company*

# EXHIBIT
# 1

The undersigned declares that the attached is a true copy of
MAIN STREET AMERICA ASSURANCE COMPANY Policy Number MPU5515LↃ
consisting of a total of 90 pages, attached hereto.

8/1/17 _____ _____ _____ Operations Manager

Date            Signature                              Title



**THE MAIN STREET AMERICA GROUP**

**Policy Number: MPU5515L**

### BUSINESSOWNERS COMMON DECLARATIONS

## MAIN STREET AMERICA ASSURANCE COMPANY
4601 TOUCHTON ROAD EAST, SUITE 3400, JACKSONVILLE, FL 32245-6000

| Item 1. | Named Insured and Mailing Address | Agent Name and Address |
|---|---|---|
| | FRIEL PLASTERING & STUCCO INC<br>30 RALSTON AVE<br>HAVERTOWN PA 19083-2209 | PETERSON INSURANCE SERVICES<br><br>140 WEST EAGLE ROAD<br>HAVERTOWN, PA 19083<br><br>Agent Phone No. (610)446-5059<br>Agent No.   371461 |

**Item 2.**  Policy Period  **From:**  01-01-2014 **To:**  01-01-2015

at 12:01 A.M., Standard Time at your mailing address shown above.

**Item 3.**  Form of Business:  CORPORATION

**Item 4.**  In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated.  Where no premium is shown, there is no coverage.  This premium may be subject to adjustment.

| COVERAGE | PREMIUM |
|---|---|
| Section I – Property | REDACTED |
| Section II – Liability | $ |
| Inland Marine | $ |
| | |
| Total Policy Premium: | $  REDACTED |

For Coverages subject to premium audit: Annual Audit Applies

**Item 5.**  Form(s) and Endorsement(s) made a part of this policy at time of issue:
**See Schedule of Forms and Endorsements**

Countersigned:

Date: _____    By: _____

Authorized Representative

THIS BUSINESSOWNERS COMMON DECLARATIONS AND SUPPLEMENTAL DECLARATION(S), TOGETHER WITH SECTION III – COMMON POLICY CONDITIONS, COVERAGE PARTS, COVERAGE FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

BPM D 1 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:37 PM
2014 POLICY 02

MAIN STREET AMERICA ASSURANCE COMPANY

**Policy Number:  MPU5515L**

| | | |
|---|---|---|
| Named Insured: | FRIEL PLASTERING & STUCCO INC | Effective Date:   01-01-2014 |
| Agent Name: | PETERSON INSURANCE SERVICES | Agent No.   371461 |

## SECTION II – LIABILITY – DECLARATIONS

| COVERAGES | LIMITS |
|---|---|
| Liability & Medical Expenses – Each Occurrence | $  1,000,000 |
| Personal & Advertising Injury Limit | $  1,000,000 |
| Damage To Premises Rented To You | $    500,000 |
| Aggregate Limit- Products-Completed Operations | $  2,000,000 |
| Aggregate Limit- Except Products-Completed Operations | $  2,000,000 |
| Medical Expense Limit  - Per Person | $     10,000 |

## LIABILITY -- SCHEDULE

STATE:   PA          TERRITORY: 007                    PREMISES NO:    1/1

   CLASS CODE:   98449     DEDUCTIBLE - PROPERTY DAMAGE LIABILITY:     NONE

   CLASSIFICATION:   PLASTERING OR STUCCO -- EXTERIOR -- THREE STORIES OR LESS

| PREMIUM BASIS | EXPOSURE | RATE | ADVANCE PREMIUM |
|---|---|---|---|
| PAYROLL | 30,400 | | $  REDACTED |

CERTIFIED POLICY COPY

8/1/2017 2:31:38 PM

2014 POLICY 03

MAIN STREET AMERICA ASSURANCE COMPANY

**Policy Number: MPU5515L**

Named Insured:   FRIEL PLASTERING & STUCCO INC

Agent Name:   PETERSON INSURANCE SERVICES

Effective Date:   01-01-2014

Agent No.   371461

**LIABILITY – OPTIONAL COVERAGES**
**EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE**
**ENDORSEMENT–SUPPLEMENTAL DECLARATIONS**
SEE FORM #   BPM D 3107

**EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE**
**ENDORSEMENT**
SEE FORM #   BPM 3107CW

**BPM D LIAB 1207**

CERTIFIED POLICY COPY

**PAGE 1**

8/1/2017 2:31:39 PM

2014 POLICY 04



**THE MAIN STREET AMERICA GROUP**

**Policy Number: MPU5515L**

### SCHEDULE OF FORMS AND ENDORSEMENTS

## MAIN STREET AMERICA ASSURANCE COMPANY

Named Insured: FRIEL PLASTERING & STUCCO INC          Effective Date: 01-01-2014

Agent Name: PETERSON INSURANCE SERVICES          Agent No. 371461

### PROPERTY AND LIABILITY FORMS AND ENDORSEMENTS

| Form | Date | Description |
|------|------|-------------|
| BPM D 1 | 12-07 | BUSINESSOWNERS COMMON DECLARATIONS |
| BPM D LIAB | 12-07 | LIABILITY DECLARATIONS |
| BPM S FORMS | 12-07 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| BPM N 3 | 12-07 | IDENTITY THEFT RESOLUTION SERVICES |
| BPM N 2 | 12-07 | QUICK REFERENCE GUIDE-SECTION II-III |
| BPM P 2 | 12-07 | SECTION II - LIABILITY COVERAGE FORM |
| BPM P 3 | 12-07 | SECTION III - COMMON POLICY CONDITIONS |
| BPM 2102 | 12-07 | IDENTITY THEFT EXPENSE COVERAGE |
| BPM 2103 | 10-08 | CAP ON LOSSES-CERTIFIED ACTS-TERRORISM |
| BPM 3105 | 12-07 | CONTRACTORS EXTENSION ENDORSEMENT |
| BPM 3107CW | 06-13 | EPLI COVERAGE ENDORSEMENT |
| BPM 3110 | 12-07 | EXCLUSION-EXT INSULATION-FINISH SYSTEMS |
| BPM 3112 | 12-07 | AMENDMENT-AGGREGATE LIMITS-PER PREMISES |
| BPM 3113 | 12-07 | LTD PERSONAL PROP & LOST KEYS OF OTHERS |
| BPM D 3107CW | 06-13 | EPLI COVERAGE ENDOR - SUPPLEMENTAL DEC |
| BPM 5122 | 06-13 | PENNSYLVANIA CHANGES |
| BP 01 42 | 01-06 | PENNSYLVANIA CHANGES |
| BP 01 91 | 07-02 | PENNSYLVANIA NOTICE |
| BP 04 17 | 07-02 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| BP 04 54 | 01-06 | NEWLY ACQUIRED ORGANIZATIONS |
| BP 04 97. | 01-06 | WAIVER OF TRANSFER RIGHTS |
| BP 05 17 | 01-06 | EXCLUSION-SILICA OR SILICA-RELATED DUST |
| BP 05 65 | 01-07 | COND EXCL-NUC/BIO/CHEM (DISP TRIA 2002) |
| BP 05 77 | 01-06 | FUNGI OR BACTERIA EXCLUSION (LIABILITY) |
| BP 05 98 | 01-06 | AMENDMENT-INSURED CONTRACT DEFINITION |
| BP 06 07 | 05-11 | PENNSYLVANIA CHANGES - DEFENSE COST |
| BP 07 02 | 07-02 | AMENDMENT-AGGREGATE LIMITS(PER PROJECT) |

### INLAND MARINE FORMS AND ENDORSEMENTS

| Form | Date | Description |
|------|------|-------------|
| BPM D IM | 12-07 | INLAND MARINE DECLARATIONS |
| BPM 4100 | 12-07 | CONTRACTORS INLAND MARINE ENDORSEMENT |
| 64-N548 | 10-08 | CONTRACTORS EQUIPMENT SCHEDULE |
| 64-8767 | 01-08 | CONTRACTORS EQUIPMENT COVERAGE-SPECIAL |
| 64-N554 | 05-92 | INSTALLATION COVERAGE - SPECIAL FORM |
| 64-N647 | 01-93 | INLAND MARINE REPLACEMENT COST ENDT |
| CM 00 01 | 09-04 | COMMERCIAL INLAND MARINE CONDITIONS |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 01 66 | 09-07 | PENNSYLVANIA CHANGES-ACTUAL CASH VALUE |
| IL 01 72 | 09-07 | PENNSYLVANIA CHANGES |
| IL 02 46 | 09-07 | PA CHANGES-CANCELLATION AND NONRENEWAL |
| IL 09 10 | 07-02 | PENNSYLVANIA NOTICE |

### POLICYHOLDER NOTICES

| Form | Date | Description |
|------|------|-------------|
| 64-5960 | 10-06 | PRIVACY NOTICE |
| 64-8162 | 01-08 | POLICYHOLDER DISCL. NOTICE - TERRORISM |
| 60-N180 | 09-11 | MSAA PARTICIPATION CLAUSE |

FORM-SCHED 1207

CERTIFIED POLICY COPY

BUSINESSOWNERS
BPM N 3 1207

# IDENTITY THEFT RESOLUTION SERVICES

Identity theft is the fastest growing crime in the United States. In the event that you become a victim, you can now use our free identity theft resolution service provided by Identity Theft 911®, the premier identity theft resolution service provider in the United States. These services are available because your policy includes **Identity Theft Expense Coverage** at no additional cost and provides coverage to you as a business owner of a Sole Proprietorship, or in the case of a Limited Liability Company (LLC), Corporation (Inc.), Limited Liability Partnership (LLP) or any legal equivalent, the President, Main Principal or Senior Partner(s).

As part of the identity theft resolution service, if you become a victim of identity theft and need help safeguarding your personal information, a personal advocate at Identity Theft 911 will be assigned to work one-on-one with you – from the first call through crisis resolution.  Your personal advocate can take care of any activity that can legally be handled by a third party.

**Identity theft resolution service also provides:**

- ✓ Systematic notification to credit bureaus, creditors and collectors, government agencies and relevant parties.

- ✓ Preparation of all documents and phone calls needed to resolve your identity theft, including placing fraud alerts.

- ✓ Direct assistance with filing a police report – plus a comprehensive case file to assist law enforcement and claims handling.

- ✓ Federal Trade Commission fraud victim affidavit is created on your behalf by the personal advocate.

- ✓ Three-in-one credit report and ongoing credit monitoring.

- ✓ Optional credit file freezes and interfaces with state identity theft passport programs (where available).

- ✓ Ongoing fraud monitoring of more than 1,000 databases (including Department of Motor Vehicles) to identify fraudulent use of your stolen identity.

- ✓ Full year of active follow-up, commencing on the date the case is determined to be closed, to judge the effectiveness of the crisis resolution.

Our **Identity Theft Expense Coverage (BPM 2102 12 07)** provides up to **$15,000** of insurance coverage to pay for the expenses incurred by you as the result of identity theft.

Coverage highlights include:

- ✓ Lost wages as a result of time away from work.
- ✓ Costs for notarizing affidavits or similar documents.
- ✓ Loan application fees when reapplying for loans initially rejected solely due to incorrect credit information.
- ✓ Postage, phone and shipping fees.
- ✓ Certain legal fees to defend lawsuits brought against you as a result of identity fraud.

THIS NOTICE DOES NOT PROVIDE COVERAGE NOR DOES THIS NOTICE REPLACE ANY PROVISIONS OF YOUR POLICY.  IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE,  **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

CERTIFIED POLICY COPY

8/1/2017 2:31:40 PM

2014 POLICY 06

BUSINESSOWNERS
BPM N 2 1207

# QUICK REFERENCE GUIDE
## Businessowners Coverage Form
### Section II -- Liability, Section III -- Common Conditions

**SECTION II - LIABILITY**

A. COVERAGES    1

   1. Business Liability and
     Supplementary Payments

   2. Medical Expenses

B. EXCLUSIONS    3

   1. Applicable to Business Liability

   2. Applicable to Medical Expenses

   3. Applicable to Both Business Liability
     and Medical Expenses Coverage
     – Nuclear Energy Liability Exclusion

C. WHO IS AN INSURED    10

D. LIABILITY AND MEDICAL EXPENSES
   LIMITS OF INSURANCE    11

E. LIABILITY AND MEDICAL EXPENSES
   GENERAL CONDITIONS    12

F. LIABILITY AND MEDICAL EXPENSES
   DEFINITIONS    12

**SECTION III – COMMON POLICY
CONDITIONS**

A – CANCELLATION    1

B – CHANGE    1

C – CONCEALMENT, MISREPRESENTATION
   OR FRAUD    1

D – EXAMINATION OF YOUR BOOKS AND
   RECORDS    2

E – INSPECTIONS AND SURVEYS    2

F – INSURANCE UNDER TWO OR MORE
   COVERAGES    2

G – LIBERALIZATION    2

H – OTHER INSURANCE    2

I – PREMIUMS    2

J – PREMIUM AUDIT    2

K – TRANSFER OF RIGHTS OF RECOVERY
   AGAINST OTHERS TO US    3

L – TRANSFER OF YOUR RIGHTS AND
   DUTIES UNDER THIS POLICY    3

CERTIFIED POLICY COPY

8/1/2017 2:31:41 PM
2014 POLICY 07

# BUSINESSOWNERS COVERAGE FORM

## SECTION II – LIABILITY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

In Section **II** – Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to I –Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** – Liability.

**A. Coverages**

  **1. Business Liability**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** – Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and

      **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

    **b.** This insurance applies:

      **(1)** To "bodily injury" and "property damage" only if:

      **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

      **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

    **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

    **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

Includes copyrighted material of ISO, Inc. with permission.

CERTIFIED POLICY COPY

8/1/2017 2:31:42 PM

2014 POLICY 08

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**f. Coverage Extension — Supplementary Payments**

**(1)** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(a)** All expenses we incur.

**(b)** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(c)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**(e)** All costs taxed against the insured in the "suit".

**(f)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(g)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

**(2)** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**(a)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**(b)** This insurance applies to such liability assumed by the insured;

**(c)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(d)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(e)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(f)** The indemnitee:

**(i)** Agrees in writing to:

**i.** Cooperate with us in the investigation, settlement or defense of the "suit";

**ii.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**iii.** Notify any other insurer whose coverage is available to the indemnitee; and

**iv.** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(ii)** Provides us with written authorization to:

**i.** Obtain records and other information related to the "suit"; and

**ii.** Conduct and control the defense of the indemnitee in such "suit".

Includes copyrighted material of ISO, Inc. with permission.        BPM P 2 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:43 PM

2014 POLICY 09

**(3)** So long as the conditions in Paragraph **(2)** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section II – Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(a)** We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**(b)** The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above are no longer met.

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section II – Liability. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

CERTIFIED POLICY COPY

8/1/2017 2:31:43 PM

2014 POLICY 10

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

Includes copyrighted material of ISO, Inc. with permission.          BPM P 2 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:44 PM

2014 POLICY 11

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 51 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

CERTIFIED POLICY COPY

8/1/2017 2:31:45 PM
2014 POLICY 12

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

  (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

  (b) The operation of any of the following machinery or equipment:

    (i) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    (ii) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

i. **War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

j. **Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

(4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

(5) Any health or therapeutic service treatment, advice or instruction;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services; and

(9) Services in the practice of pharmacy.

k. **Damage To Property**

"Property damage" to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

Includes copyrighted material of ISO, Inc. with permission.

BPM P 2 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:46 PM

2014 POLICY 13

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limit Of Insurance in Section **II** – Liability.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(5)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(6)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(7)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(8)** Committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

CERTIFIED POLICY COPY

8/1/2017 2:31:46 PM

2014 POLICY 14

**(b)** Designing or determining content of web-sites for others; or

**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

**(9)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**(10)** With respect to any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants".

**(11)** Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

**(12)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**(13)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**q.** **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**r.** **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**s.** **Distribution Of Material In Violation Of Statutes**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.**, **d.**, **e.**, **f.**, **g.**, **h.**, **i.**, **k.**, **l.**, **m.**, **n.** and **o.** in Section **II** — Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section **II** — Liability.

**2.** **Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured, except "volunteer workers".

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

Includes copyrighted material of ISO, Inc. with permission.

BPM P 2 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:47 PM

2014 POLICY 15

e. To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

f. Included within the "products-completed operations hazard".

g. Excluded under Business Liability Coverage.

3. **Applicable To Both Business Liability Coverage And Medical Expenses Coverage — Nuclear Energy Liability Exclusion**

This insurance does not apply:

a. Under Business Liability Coverage, to "bodily injury" or "property damage":

   (1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

      (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

      (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b. Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

c. Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

   (1) The "nuclear material":

      (a) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

      (b) Has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   (3) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

d. As used in this exclusion:

   (1) "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   (2) "Hazardous properties" include radioactive, toxic or explosive properties;

   (3) "Nuclear facility" means:

      (a) Any "nuclear reactor";

      (b) Any equipment or device designed or used for:

         (i) Separating the isotopes of uranium or plutonium;

         (ii) Processing or utilizing "spent fuel"; or

         (iii) Handling, processing or packaging "waste";

      (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

      (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

      and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

CERTIFIED POLICY COPY

8/1/2017 2:31:48 PM

2014 POLICY 16

(4) "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(5) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(6) "Property damage" includes all forms of radioactive contamination of property;

(7) "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(8) "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(9) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

(10) "Waste" means any waste material:

(a) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

(b) Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs (a) and (b) of the definition of "nuclear facility".

## C. Who Is An Insured

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (a) or (b); or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

Includes copyrighted material of ISO, Inc. with permission.          BPM P 2 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:49 PM

2014 POLICY 17

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance of Section **II** – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

**4. Aggregate Limits**

The most we will pay for:

**a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

**b.** All:

**(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

**(2)** Plus medical expenses;

**(3)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses limit.

Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section **II** – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

CERTIFIED POLICY COPY

8/1/2017 2:31:49 PM

2014 POLICY 18

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this policy:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Separation Of Insureds**

   Except with respect to the Limits of Insurance of Section II – Liability, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

F. **Liability And Medical Expenses Definitions**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

Includes copyrighted material of ISO, Inc. with permission.

BPM P 2 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:50 PM

2014 POLICY 19

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

   **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

   **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

   **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication.

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   **(1)** The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **(2)** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

     **(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

     **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection or engineering services.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

CERTIFIED POLICY COPY

8/1/2017 2:31:51 PM

2014 POLICY 20

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, on which are permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

   However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

Includes copyrighted material of ISO, Inc. with permission.

BPM P 2 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:52 PM

2014 POLICY 21

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

CERTIFIED POLICY COPY

8/1/2017 2:31:52 PM

2014 POLICY 22

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

    a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      (2) The providing of or failure to provide warnings or instructions.

Includes copyrighted material of ISO, Inc. with permission.

BPM P 2 1207

CERTIFIED POLICY COPY

8/1/2017 2:31:53 PM

2014 POLICY 23

# BUSINESSOWNERS COVERAGE FORM

## SECTION III -- COMMON POLICY CONDITIONS

**(APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)**

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy;

   (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

      (a) Seasonal unoccupancy; or

      (b) Buildings in the course of construction, renovation or addition.

      Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

   (2) After damage by a Covered Cause of Loss, permanent repairs to the building:

      (a) Have not started, and

      (b) Have not been contracted for,

      within 30 days of initial payment of loss.

   (3) The building has:

      (a) An outstanding order to vacate;

      (b) An outstanding demolition order; or

      (c) Been declared unsafe by governmental authority.

   (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

   (5) Failure to:

      (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

      (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   **b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   **c.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. Concealment, Misrepresentation Or Fraud

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

BPM P 3 1207          Includes Copyrighted Material of ISO, Inc. with Permission          Page 1 of 3      □

CERTIFIED POLICY COPY

8/1/2017 2:31:54 PM

2014 POLICY 24

4. A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe and healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section I – Property.

2. Business Liability Coverage is excess over:

   a. Any other insurance that insures for direct physical loss or damage; or

   b. Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

3. When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums; and

   b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

   a. Paid to us prior to the anniversary date; and

   b. Determined in accordance with Paragraph **2.** above.

   Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Premium Audit**

1. This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

   Includes Copyrighted Material of ISO, Inc. with Permission   BPM P 3  1207   ☐

CERTIFIED POLICY COPY

8/1/2017 2:31:55 PM

2014 POLICY 25

2. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

3. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**K. Transfer Of Rights Of Recovery Against Others To Us**

1. Applicable to Businessowners Property Coverage:

   If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

   **a.** Prior to a loss to your Covered Property.

   **b.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

      **(1)** Someone insured by this insurance;

      **(2)** A business firm:

         **(a)** Owned or controlled by you; or

         **(b)** That owns or controls you; or

      **(3)** Your tenant.

   You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

   This will not restrict your insurance.

2. Applicable to Businessowners Liability Coverage:

   If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

CERTIFIED POLICY COPY

8/1/2017 2:31:56 PM

2014 POLICY 26

BUSINESSOWNERS
BPM 2102 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# IDENTITY THEFT EXPENSE COVERAGE

**DEFINITIONS**

With respect to the provisions of this endorsement only, the following definitions are added:

1. "Identity theft" means the act of knowingly transferring or using, without lawful authority, a means of identification of an "insured" with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

2. "Expenses" means:

   a. Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies.

   b. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors.

   c. Lost income resulting from time taken off work to complete fraud affidavits, meet with or talk to law enforcement agencies, credit agencies and/or legal counsel, up to a maximum payment of $200 per day. Total payment for lost income is not to exceed $5,000.

   d. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

   e. Reasonable attorney fees incurred as a result of "identity theft" to:

      (1) Defend lawsuits brought against an "insured" by merchants, financial institutions or their collection agencies;

      (2) Remove any criminal or civil judgments wrongly entered against an "insured"; and

      (3) Challenge the accuracy or completeness of any information in a consumer credit report.

   f. Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual "identity theft".

**IDENTITY THEFT EXPENSE**

We will pay up to $15,000 for "expenses" incurred by an "insured" as the direct result of any one "identity theft" first discovered or learned of during the policy period.

Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others against an "insured", is considered to be one "identity theft", even if a series of acts continues into a subsequent policy period.

This coverage is additional insurance.

**EXCLUSIONS**

The following additional exclusions apply to this coverage:

We do not cover:

1. "Expenses" incurred due to any fraudulent, dishonest or criminal act by an "insured" or any person aiding or abetting an "insured", or by any authorized representative of an "insured", whether acting alone or in collusion with others.

2. Loss other than "expenses".

**DUTIES AFTER LOSS**

Send to us, within 60 days after our request, receipts, bills or other records that support your claim for "expenses" under "identity theft" coverage.

All other provisions of this policy apply.

CERTIFIED POLICY COPY

8/1/2017 2:31:56 PM

2014 POLICY 27

BUSINESSOWNERS
BPM 2103 10 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The following provision is added to Businessowners Coverage Form **BPM P 1** :

**APPLICATION OF OTHER EXCLUSIONS**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Form or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**8/1/2017 2:31:57 PM**

2014 POLICY 28

BUSINESSOWNERS
BPM 3105 1207

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CONTRACTORS EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### A. Additional Insureds

Each of the following is added to Paragraph **C. Who Is An Insured** of **BPM P 2 — Section II — Liability** but only as specifically described by the following:

1. Any person(s) or organization(s) for whom you are performing operations is also an additional insured, when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage", "personal and advertising injury" caused in whole or part, by:

   **a.** Your acts or omissions; or

   **b.** The acts or omissions of those acting on your behalf;

   In the performance of your ongoing operations or "your work" included within the "products-completed operations" hazard for the additional insured at the location designated and described in the written contract or agreement.

   This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

   **a.** The preparing , approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **b.** Supervisory, inspection, architectural or engineering activities.

2. Any manager or lessor of premises to whom you are obligated by virtue of a written "Insured Contract" to provide insurance such as is afforded by this policy, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you. This insurance does not apply to:

   **a.** Any "occurrence" that takes place after you cease to be a tenant in the premises; or

   **b.** Structural alterations, new construction or demolition operations performed by or for such additional insured.

3. Any state or political subdivision, subject to the following provisions:

   **a.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

   **b.** This insurance does not apply to:

   **(1)** "Bodily injury", "property damage", "personal and advertising injury" arising out of operations performed for the state or municipality; or

   **(2)** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

4. Any person(s) or organization(s) who is the lessor of leased equipment leased to you, and required by the lease to be included as an additional insured but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or part, by your maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s).

   With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

CERTIFIED POLICY COPY

8/1/2017 2:31:58 PM

2014 POLICY 29

5. Any architect, engineer, or surveyor engaged by you but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or part, by:

a. Your acts or omissions; or

b. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations performed by you or on your behalf.

The insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury", arising out of the rendering of or the failure to render any professional services by or for you, including:

a. The preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

b. Supervisory, inspection, or engineering services.

6. Any person or organization as mortgagee, assignee or receiver, but only with respect to liability as mortgagee, assignee or receiver and arising out of the ownership, maintenance or use of the premises by you.

This insurance does not apply to:

a. Any "occurrence" that takes place after you ease to be a tenant in that premises; or

b. Structural alterations, new construction and demolition operations performed by or for that person or organization.

**B. Artisans Legal Liability**
Paragraph **B.1.J, Exclusions, Professional Services** of **BPM P 2 – Section II – Liability** is amended as follows:

Professional services do not include those services employed by you in connection with your operations in your capacity as a construction contractor. This includes:

1. Construction means, methods, techniques, sequences and procedures,
2. Misinterpretation or wrongful application of designs, specification, drawings, surveys, maps, reports, opinions or change orders, and
3. Incidental systems or product amendment that is necessary for installation, service or completion of work performed by you.

**C.** The following is added to Paragraph **H. Other Insurance** of **BPM P 3 – Section III - Common Policy Conditions**:

Primary Additional Insured – If a written contract or agreement or permit requires this insurance to be primary for any person or organization with whom you agree to include in paragraph **C. Who Is An Insured** of **BPM P 2 – Section II – Liability**, this Other Insurance provision is applicable. This insurance is primary. This insurance is also non-contributory which means we will not seek contribution from other insurance available to the person or organization with whom you agree to include in **Who Is An Insured**.

Includes copyrighted material of ISO, Inc. with permission     **BPM 3105 1207**   ☐

CERTIFIED POLICY COPY

8/1/2017 2:31:59 PM

2014 POLICY 30

BPM 3107CW 0613

---

**THIS IS A CLAIMS-MADE AND REPORTED COVERAGE ENDORSEMENT.**

---

# EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE ENDORSEMENT

Throughout this Coverage Endorsement (hereinafter referred to as "EPL Coverage"), the words "you" and "your" refer to the "named insured(s)" shown in the Supplemental Declarations of this EPL Coverage and any other person(s) or organization(s) qualifying as a "named insured" under this EPL Coverage. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION III. WHO IS AN INSURED.

Other words and phrases that appear in "quotations" have special meaning. Refer to SECTION VII. DEFINITIONS.

The terms and conditions of the Cancellation Clause of the Common Policy Conditions and any amendment to such terms incorporated by endorsement are hereby incorporated herein and shall apply to coverage as is afforded by this EPL Coverage, unless specifically stated otherwise in an endorsement(s) attached hereto.

## SECTION I. WHAT IS COVERED

### A. Insuring Agreement

1. "We" shall pay those "losses" arising out of an "insured's" "wrongful employment act" against "your" "employees", "recognized volunteers" and applicants for employment to which this insurance applies.

2. For coverage to apply under this EPL Coverage, the "wrongful employment act" must commence or take place after the Retroactive Date, but before the end of the "EPL coverage period". If no Retroactive Date appears on the Supplemental Declarations then the Retroactive Date shall be the date of organization of the "named insured." A "claim" or "suit" for a "wrongful employment act" must be first made against "you" during the "EPL coverage period" or Extended Reporting Periods (if applicable) and reported to "us" pursuant to the terms of this EPL Coverage.

3. A "claim" or "suit" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

   a. When written notice of such "claim" or "suit" is received and recorded by any "insured" or by "us", whichever comes first; or

   b. When "we" make any settlement in accordance with the terms of this EPL Coverage.

### B. Defense

1. "We" have the right and duty to defend and appoint an attorney to defend any "claim" or "suit" brought against any "insured" for a "wrongful employment act" to which this insurance applies, even if the "claim" or "suit" is groundless or fraudulent.

   At the time a "claim" or "suit" is first reported to "us", "you" may request that "we" appoint a defense attorney of "your" choice. "We" will give full consideration to any such request.

2. "We" have the right to investigate and settle any "claim" or "suit" that "we" believe is proper. "You" shall be entitled to consent to such settlement, provided "your" consent is not unreasonably withheld and is provided as soon as practicable.

   If "you" refuse to consent to any settlement that "we" recommend and that is acceptable to the claimant, then "our" liability under this EPL Coverage for such "claim" or "suit" shall not exceed the amount for which we could have settled had "your" consent not been withheld at the time of "our" recommendation. "You" shall thereafter negotiate and defend that "claim" or "suit" at "your" own cost and without "our" involvement.

3. "We" shall pay all reasonable costs "we" ask the "insured" to incur while helping "us" investigate or defend a "claim" or "suit". "We", however, will not pay more than $250 per day for earnings lost by the "insured" because of time taken off from work.

CERTIFIED POLICY COPY

8/1/2017 2:31:59 PM

2014 POLICY 31

4. "We" shall pay premiums for appeal bonds, or bonds to release property being used to secure a legal obligation, for a covered "suit". "We" shall only pay, however, for bonds valued up to "our" EPL Aggregate Limit of Liability. "We" shall have no obligation to appeal or to obtain these bonds.

5. Payments for "defense costs" are included within the EPL Aggregate Limit of Liability. They are not in addition to the EPL Aggregate Limit of Liability. "Our" duty to defend or to make payment of any "claim" or "suit" pursuant to Paragraphs 1. through 4. of this Clause B., ends after the EPL Aggregate Limit of Liability has been exhausted by payment of "loss", including "defense costs".

6. "We" shall pay all interest on that amount of any judgment within the EPL Aggregate Limit of Liability:

   a. Which accrues after entry of judgment; and

   b. Before "we" pay, offer to pay, or deposit in court that part of the judgment within the EPL Aggregate Limit of Liability.

   These interest payments shall be in addition to and not part of the EPL Aggregate Limit of Liability.

C. Transfer of Control

1. "You" may take over control of any outstanding "claim" or "suit" previously reported to "us", but only if "we", in "our" sole discretion, decide that you should, or if a court orders "you" to do so.

2. Notwithstanding Paragraph 1. of this Clause C., in all events, if the EPL Aggregate Limit of Liability is exhausted, "we" will notify "you" of all outstanding "claims" or "suits" and "you" will take over control of the defense. "We" will help transfer control of the "claims" and "suits" to "you".

3. "We" shall take whatever steps are necessary to continue the defense of any outstanding "claim" or "suit" and avoid a default judgment during the transfer of control to "you". If "we" do so, "we" shall not waive or give up any of "our" rights. "You" shall pay all reasonable expenses "we" incur for taking such steps after the EPL Aggregate Limit of Liability is exhausted.

## SECTION II. EXCLUSIONS—WHAT IS NOT COVERED

This insurance does not apply to:

A. **Criminal Acts**

Any liability arising out of any dishonest, fraudulent, criminal, or malicious act by or at the direction of any "insured". However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage "we" will defend a "claim" or "suit" asserting a dishonest, fraudulent, criminal or malicious act until such time as the "insured" is determined to have committed such dishonest, fraudulent, criminal or malicious act;

The "wrongful employment act(s)" of an "insured" shall not be imputed to any other "insured" for the purpose of determining the applicability of this Exclusion A.;

B. **"Property Damage"**

Any liability arising out of "property damage";

C. **"Bodily Injury"**

Any liability arising out of "bodily injury";

D. **Worker's Compensation, Social Security and Unemployment, Disability and Retirement Benefits**

Any liability arising out of any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

E. **Contractual Liability**

Any liability arising out of any actual or alleged contractual liability of any "insured" under any express contract or agreement. This exclusion, however, shall not apply to any liability the "insured" would have in the absence of such express contract or agreement;

F. **ERISA, FLSA, NLRA, WARN, COBRA, and OSHA**

Any liability for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law.

CERTIFIED POLICY COPY

8/1/2017 2:32:00 PM

2014 POLICY 32

BPM 3107CW 0613

It is acknowledged that "claims" and "suits" for violation(s) of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statutory law or common law," as such quoted language is used in the immediately-preceding paragraph, include, without limitation, any and all "claims" and "suits" which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

1. The refusal, failure or inability of any "insured(s)" to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);
2. Improper deductions from pay taken by any "insured(s)" from any "employee(s)" or purported employee(s); or
3. Failure to provide or enforce legally required meal or rest break periods;

Notwithstanding the foregoing, this Exclusion F. shall not apply to the extent that a "claim" or "suit" is for "retaliation";

**G. Prior Knowledge**

Any liability arising out of incidents, circumstances or "wrongful employment acts", which an "insured"
1. Had knowledge of; or
2. Could have reasonably foreseen might result in a "claim" or "suit"

and which were known to the "insured" prior to the effective date of this EPL Coverage or the first EPL Coverage issued by "us" of which this EPL Coverage is an uninterrupted renewal;

**H. Prior Notice**

Any liability arising out of the facts alleged, or to the same or "related wrongful employment acts" alleged or contained in any "claim" or "suit" which has been reported, or in any circumstances of which notice has been given, under any policy of which this EPL Coverage is a renewal or replacement or which it may succeed in time;

**I. Prior Litigation**

Any liability arising out of any prior
1. Litigation; or
2. Administrative or regulatory proceeding or investigation

of which an "insured" had notice, or alleging the same or "related wrongful employment acts" alleged or contained in such pending or prior litigation or administrative or regulatory proceeding or investigation which the "insured" had knowledge of prior to the effective date of this EPL Coverage or the first EPL Coverage issued by "us" of which this EPL Coverage is an uninterrupted renewal.

## SECTION III. WHO IS AN INSURED

**A. Individual**

If "you" are shown in the Supplemental Declarations of this EPL Coverage as an individual, "you" and "your" spouse or "Domestic Partner" are "insureds", only for the conduct of a business of which "you" are the sole owner.

**B. Corporation**

If "you" are shown in the Supplemental Declarations of this EPL Coverage as a corporation or organization other than a partnership, joint venture, or limited liability company, "you" and "your" "subsidiaries" are "insureds".

**C. Partnership or Joint Venture**

If "you" are shown in the Supplemental Declarations of this EPL Coverage as a partnership or joint venture, "you" are an "insured". "Your" members, partners or co-venturers and their spouses or "Domestic Partners" are also "insureds", but only for the conduct of "your" business.

**D. Limited Liability Company**

If "you" are shown in the Supplemental Declarations of this EPL Coverage as a limited liability company, "you" are an "insured." "Your" members are also "insureds", but only with respect to the conduct of "your" business. "Your" managers are "insureds", but only with respect to their duties as "your" managers.

**E. Trusts**

If "you" are shown in the Supplemental Declarations of this EPL Coverage as a trust, "you" are an "insured". "Your" trustees are also "insureds", but only with respect to their duties as trustees.

**F. "Employees"**

"Your" "employees", executive officers and directors are "insureds", only for the conduct of "your" business within the scope of their employment or their duties as executive officers or directors.

**G. Extensions**

1. Subject otherwise to the terms hereof, this EPL Coverage shall cover "loss" arising from any "claims" or "suits" made against the estates, heirs, or legal representative of deceased individual "insureds", and the legal representatives of individual "insureds", in the event of incompetency, who were individual "insureds" at the time the "wrongful employment acts", upon which such "claims" or "suits" are based, were committed.

CERTIFIED POLICY COPY

8/1/2017 2:32:01 PM

2014 POLICY 33

2. Subject otherwise to the terms hereof, this EPL Coverage shall cover "loss" arising from all "claims" and "suits" made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) or "Domestic Partner" of an individual "insured", including a "claim" or "suit" that seeks damages recoverable from marital community property, property jointly held by the individual "insured" and the spouse or "Domestic Partner", or property transferred from the individual "insured" to the spouse or "Domestic Partner"; provided, however, that this extension shall not afford coverage for a "claim" or "suit" arising out of any "wrongful employment act" of the spouse or "Domestic Partner", but shall apply only to "claims" or "suits" arising out of any "wrongful employment acts" of an individual "insured", subject to this EPL Coverage's terms, conditions and exclusions.

## SECTION IV. LIMIT OF LIABILITY
### (including "defense costs")

A. The EPL Aggregate Limit of Liability shown in the Supplemental Declarations of this EPL Coverage and the information contained in this section limits the most "we" shall pay for all "loss" (other than post-judgment interest described in Section I., Clause B., Paragraph 6.) arising out of "claims" and "suits" first made against "insureds" during the "EPL coverage period" or Extended Reporting Periods (if applicable), regardless of:

1. The number of persons or organizations covered by this EPL Coverage; or

2. The number of "claims" made or "suits" brought; or

3. The length of the "EPL coverage period".

B. The EPL Aggregate Limit of Liability is the most "we" shall pay for all "losses" (other than post-judgment interest described in Section I., Clause B., Paragraph 6.), including amounts incurred for "defense costs".

C. The EPL Aggregate Limit of Liability for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to the EPL Aggregate Limit of Liability for the "EPL coverage period".

D. All "claims" and "suits" arising from the same or "related wrongful employment acts" shall be treated as arising out of a single "wrongful employment act".

E. All "claims" or "suits" arising out of one "wrongful employment act" shall be deemed to be made on the date that the first such "claim" is made or "suit" is brought. All "claims" asserted in a "class action suit" will be treated as arising out of a single "wrongful employment act".

F. Any "claim" or "suit" which is made subsequent to the "EPL coverage period" or Extended Reporting Periods (if applicable) which, pursuant to Section VI., Clause D., Paragraphs 3. and 4. is considered made during the "EPL coverage period" or Extended Reporting Periods (if applicable) shall also be subject to the one EPL Aggregate Limit of Liability stated in the Supplemental Declarations of this EPL Coverage.

## SECTION V. DEDUCTIBLE

"You" shall be responsible for the deductible amount shown in the Supplemental Declarations of this EPL Coverage with respect to each "claim" and "suit" and "you" may not insure against it. A single deductible amount shall apply to "loss" arising from all "claims" and "suits" alleging the same "wrongful employment act" or "related wrongful employment acts". Expenses "we" incur in investigating, defending and settling "claims" and "suits" are included in the deductible. The deductible is not included within the EPL Aggregate Limit of Liability.

At our option, "we" may pay any part or all of the EPL Deductible Amount to effect settlement of any "claim" or "suit" and upon notification of the action taken, "you" shall promptly reimburse "us" for such part of the deductible that has been paid by "us".

## SECTION VI. CONDITIONS

"We" have no duty to provide coverage under this EPL Coverage, unless there has been full compliance with all the Conditions contained in this EPL Coverage.

A. **Assignment**

The interest of any "insured" is not assignable. "You" cannot assign or transfer "your" interest in this EPL Coverage without "our" written consent attached to the EPL Coverage.

B. **Bankruptcy or Insolvency**

"Your" bankruptcy, insolvency or inability to pay, will not relieve "us" from the payment of any "claim" or "suit" covered by this EPL Coverage.

Under no circumstances will "your" bankruptcy, insolvency, or inability to pay require "us" to drop down, in any way replace, or assume any of "your" obligations with respect to the Deductible provisions of this EPL Coverage.

C. **Coverage Territory**

"We" cover "wrongful employment acts" anywhere in the world, but only if the "claim" is made and the "suit" is brought for such "wrongful employment act" in the United States of America, its territories and possessions, Puerto Rico, or Canada.

CERTIFIED POLICY COPY

8/1/2017 2:32:02 PM

2014 POLICY 34

BPM 3107CW 0613

D. **Duties in the Event of an Incident, "Claim" or "Suit"**

1. If, during the "EPL coverage period", incidents or events occur which "you" reasonably believe may give rise to a "claim" or "suit" for which coverage may be provided hereunder, such belief being based upon either written notice from the potential claimant or the potential claimant's representative; or notice of a complaint filed with EEOC, DOL or OFCCP (or similar federal, state or local agency); or upon an oral "claim", allegation or threat, "you" shall give written notice to "us" as soon as practicable and either:

   a. Anytime during the "EPL coverage period"; or

   b. Anytime during the Extended Reporting Periods (if applicable).

2. If a "claim" is made or a "suit" is brought against any "insured", "you" must:

   a. Immediately record the specifics of the "claim" or "suit" and the date received; and

   b. Provide "us" with written notice, as described in Paragraph 3. of this Clause D., as soon as practicable.

3. Such written notice of "claim" or "suit" shall contain:

   a. The identity of the person(s) alleging a "wrongful employment act";

   b. The identity of the "insured(s)" who allegedly were involved in the incidents or events;

   c. The date the alleged incidents or events took place; and

   d. The written notice or a memorandum of the oral "claim", allegation or threat referred to above.

   If written notice is given to "us" during the "EPL coverage period" or Extended Reporting Periods (if applicable), pursuant to the above requirements, then any "claim" or "suit" which is subsequently made against any "insureds" and reported to "us" alleging, arising out of, based upon or attributable to such circumstances or alleging any "related wrongful employment act" to such circumstances, shall be considered made at the time such notice of such circumstances was first given.

4. If "you" submit written notice of a "claim" or "suit", pursuant to this Clause D., then any "claim" or "suit" that may subsequently be made against an "insured" and reported to "us" alleging the same or a "related wrongful employment act" to the "claim" or "suit" for which such notice has been given shall be deemed, for the purpose of this insurance, to have been first made during the "EPL coverage period" or Extended Reporting Period (if applicable) in effect at the time such written notice was first submitted to "us".

5. "You" and any other "insured" must:

   a. Immediately send "us" copies of any demands, notices, summonses or legal papers received in connection with any "claim" or "suit";

   b. Authorize "us" to obtain records and other information;

   c. Cooperate with "us" in the investigation, settlement or defense of the "claim" or "suit";

   d. Assist "us", upon "our" request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply;

   e. Not take any action, nor fail to take any required action, that prejudices the rights of the "insureds" or "us" with respect to such "claim" or "suit".

6. No "insureds" will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without "our" prior written consent.

E. **Transfer of Rights of Recovery Against Others to "Us"**

"You" may be able to recover all or part of a "loss" from someone other than "us". "You", therefore, shall do all that is possible after a "loss" to preserve any such right of recovery. If "we" make a payment under this EPL Coverage, that right of recovery shall belong to "us". "You" shall do whatever is necessary, including signing documents, to help "us" obtain that recovery.

F. **Extended Reporting Periods**

1. "You" shall have the right to the Extended Reporting Periods described in Paragraph 2. of this Clause F., in the event that:

   a. "You" or "we" shall cancel this EPL Coverage;

   b. "You" or "we" shall refuse to renew this EPL Coverage; or

CERTIFIED POLICY COPY

8/1/2017 2:32:02 PM

2014 POLICY 35

BPM 3107CW 0613

c. "We" renew this EPL Coverage on an other than a claims-made basis or with a Retroactive Date later than the Retroactive Date shown on the Supplemental Declarations of this EPL Coverage;

2. If an event as specified in Paragraph 1. of this Clause F. has occurred, "you" shall have the right to the following:

a. An Automatic Extended Reporting Period of thirty (30) days after the effective date of cancellation or nonrenewal at no additional premium in which to give to "us" written notice of "claims" first made or "suits" first brought against the "insureds" during said Automatic Extended Reporting Period for any "wrongful employment acts" occurring before the end of the "EPL coverage period" and are otherwise covered by this EPL Coverage; and

b. Upon payment of an additional premium of 100% of the full annual premium applicable to this EPL Coverage, a Supplemental Extended Reporting Period of one (1) year immediately following the effective date of cancellation or nonrenewal in which to give to "us" written notice of "claims" first made or "suits" first brought against the "insureds" during said Supplemental Extended Reporting Period for any "wrongful employment acts" occurring before the end of the "EPL coverage period" and are otherwise covered by this EPL Coverage.

To obtain the Supplemental Extended Reporting Period, "you" must request it in writing and pay the additional premium due, within thirty (30) days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the

inception of the Supplemental Extended Reporting Period. If "we" do not receive the written request as required, "you" may not exercise this right at a later date.

This insurance, provided during the Supplemental Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Supplemental Extended Reporting Period becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

G. Change in Control of "Named Insured"

In the event of a "Transaction" then this EPL Coverage shall continue in full force and effect as to "wrongful employment acts" occurring prior to the effective time of the "Transaction", but there shall be no coverage afforded by any provision of this EPL Coverage for any actual or alleged "wrongful employment acts" occurring after the effective time of the "Transaction". This EPL Coverage may not be cancelled after the effective time of the "Transaction" and the entire premium for this EPL Coverage shall be deemed earned as of such time. "You" shall also have the right to the Extended Reporting Periods described in Clause F. of this Section VI.

"You" shall give "us" written notice of the "Transaction" as soon as practicable, but not later than thirty (30) days after the effective date of the "Transaction".

H. Legal Action Against "Us"

No person or organization has the right to join "us" as a party or otherwise bring "us" into a "suit" asking for damages from an "insured".

I. Other Insurance

Unless expressly written to be excess over other applicable insurance, it is intended that the insurance provided by this EPL Coverage shall be primary.

J. EPL Coverage Changes

This EPL Coverage contains all the agreements between "you" and "us" concerning this insurance. The first "named insured" in the Supplemental Declarations of this EPL Coverage is authorized to request changes in this EPL Coverage. This EPL Coverage can only be changed by a written endorsement "we" issue and make part of this EPL Coverage.

K. Representations

Any and all relevant provisions of this EPL Coverage may be voidable by "us" in any case of fraud, intentional concealment, or misrepresentation of material fact by any "insured".

L. Special Rights and Duties of the First "Named Insured"

"You" agree that when there is more than one person and/or entity covered under this EPL Coverage, the first "named insured" in the Supplemental Declarations of this EPL Coverage shall act on behalf of all "insureds" as to:

1. Giving of notice of a "claim" or "suit";

2. Giving and receiving notice of cancellation or nonrenewal;

3. Payment of premiums and receipt of return premiums;

CERTIFIED POLICY COPY

8/1/2017 2:32:03 PM

2014 POLICY 36

BPM 3107CW 0613

4. Acceptance of any endorsements issued to form a part of this EPL Coverage; or

5. Purchasing or deciding not to purchase the Supplemental Extended Reporting Period.

**M. Separation of Insureds**

Except with respect to the EPL Aggregate Limit of Liability and any rights or duties specifically assigned to the first "named insured" in Clause L. of this Section VI, this insurance applies:

1. As if each "named insured" were the only "named insured"; and

2. Separately to each insured against whom a "claim" or "suit" is made.

**N. Tie-In of Limits**

As respects any "claim" or "suit" in which at least one person/entity claimed against is an "insured" under this EPL Coverage and at least one person/entity claimed against is an insured under any other EPL Coverage issued to "you" by "us" (the "Other Policy"), the combined EPL Aggregate Limit of Liability under both this EPL Coverage and the Other Policy for all "losses" arising from such "claims" or "suits" combined shall not exceed the highest applicable limit of insurance under either this EPL Coverage or the Other Policy. This limitation shall apply even if both this EPL Coverage and the Other Policy have been triggered due to a "claim" or "suit" made against the same person/entity but alleging "wrongful employment acts" both in his, her or its capacity as an insured under the "Other policy" and as an "insured" under this EPL Coverage.

**O. Headings**

The descriptions in the headings of this EPL Coverage are solely for convenience, and form no part of the terms and conditions of coverage.

---

**SECTION VII. DEFINITIONS**

A. "Bodily injury" means physical injury, sickness, or disease, including death resulting therefrom.

B. "Claim" means a written demand for monetary and non-monetary relief (including any request to toll or waive any statute of limitations). The term "claim" shall also mean an Equal Employment Opportunity Commission (EEOC), Department of Labor (DOL) or Office of Federal Contract Compliance Program (OFCCP) (or similar federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to "you". However, in no event, shall the term "claim" include any labor or grievance proceeding, which is subject to a collective bargaining agreement.

C. "Class action suit" means any suit seeking certification or certified as a class action by a federal or state court.

D. "Defense costs" means reasonable and necessary fees, costs and expenses consented to by "us" resulting solely from the investigation, adjustment, defense and appeal of a "claim" or "suit" against "you". In no event shall "Defense Costs" include "your" or "our" routine on-going expenses, including, without limitation, the salaries of "your" or "our" "employees", officers or staff attorneys.

E. "Domestic partner" means any natural person legally recognized as a domestic or civil union partner under:

1. The provisions of any applicable federal, state or local law; or

2. The provisions of any formal program established by "you".

F. "Employee" means an individual whose labor or service is engaged by and directed by "you" for remuneration, whether such individual is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal, and temporary "employees".

An individual who is an independent contractor or leased to "you" shall also be an "employee". Independent contractors who do not provide ongoing and routine services solely for "you" shall not be considered "employees", including but not limited to independent trade contractors (e.g. plumber, electrician).

G. "EPL coverage period" means the period commencing on the effective date shown in the Supplemental Declarations of this EPL Coverage. This period ends on the earlier of the expiration date or the effective date of cancellation of this EPL Coverage. If "you" became an "insured" under this EPL Coverage after the effective date, the "EPL coverage period" begins on the date "you" became an "insured".

H. "Loss(es)" means monetary amounts to which this insurance applies and which "you" are legally obligated to pay (including front pay and back pay), judgments, settlements, pre- and post-judgment interest on that part of any judgment paid by "us", statutory attorney fees, and "defense costs"; however, "loss" shall not include:

1. Civil or criminal fines or penalties imposed by law;

2. Taxes;

3. Employment related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation;

CERTIFIED POLICY COPY

8/1/2017 2:32:04 PM

2014 POLICY 37

4. Any liability or costs incurred by any "insured" to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar; or

5. Matters which may be deemed uninsurable under the law pursuant to which this EPL Coverage shall be construed.

Where permitted by law, "loss" shall include punitive or exemplary damages imposed upon any "insured" (subject to the policy's other terms, conditions and exclusions).

I. "Named insured" means the person or organization designated in the Supplemental Declarations page of this EPL Coverage.

J. "Property damage" means physical injury to, or destruction of, tangible property including the loss of use thereof, or loss of use of tangible property, which has not been physically injured or destroyed.

K. "Recognized volunteer" means an uncompensated individual who volunteers labor or services to "you", but only when performing such labor or services at the request of and under the direction of "you".

L. "Related wrongful employment act(s)" means "wrongful employment acts" which are the same, related or continuous, or "wrongful employment acts" which arise from a common nucleus of facts. "Claims" or "suits" can allege "related wrongful employment acts", regardless of whether such "claims" or "suits" involve the same or different claimants, "insureds" or legal causes of actions.

M. "Retaliation" means a "wrongful employment act" of an "insured" alleged to be in response to, the actual or attempted exercise by an "employee" of any right that such "employee" has under the law. Provided, however, "retaliation" shall not include the "wrongful employment act" of an "insured" alleged to be in response to the threat of or the actual filing of any claim or suit under the Federal False Claims Act or any other federal, state, local or foreign "whistleblower law".

N. "Subsidiary" means:

1. Any for-profit organization which, on or before the inception of the "EPL coverage period", is more than fifty (50%) percent owned by the "named insured", either directly or indirectly through one or more of its "subsidiaries"; or

2. A for-profit organization which becomes a "subsidiary" during the "EPL coverage period", but only upon the condition that within ninety (90) days of its becoming a "subsidiary", the "named insured" shall have provided "us" with full particulars of the new "subsidiary" and agreed to any additional premium or amendment of the provisions of this EPL Coverage required by "us" relating to such new "subsidiary". Further, coverage as shall be afforded to the new "subsidiary" is conditioned upon the "named insured" paying when due any additional premium required by "us" relating to such new "subsidiary".

An organization becomes a "subsidiary" when the "named insured" owns more than fifty (50%) percent ownership interest in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries". An organization ceases to be a "subsidiary" when the "named insured" ceases to own more than a fifty (50%) percent ownership in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries".

In all events, coverage as is afforded under this EPL Coverage with respect to a "claim" made or "suit" brought against any "subsidiary" or an "insured" of any "subsidiary", shall only apply to "wrongful employment act(s)" commenced or allegedly commenced after the effective time that such "subsidiary" became a "subsidiary", and prior to the time that such "subsidiary" ceased to be a "subsidiary".

O. "Suit" means a civil proceeding or an administrative proceeding seeking money damages, and includes an arbitration, mediation or any other alternative dispute resolution procedure seeking such damages, to which the "insured" must submit or may submit with "our" consent. "Suit" shall not include any civil proceeding or administrative proceeding arising from any labor or grievance dispute which is subject to a collective bargaining agreement.

P. "Transaction" means any of the following that occur during the "EPL coverage period":

1. The "named insured" shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

2. Any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than fifty (50%) percent of the voting power for the election of directors or General Partners of the "named insured" (in the event the "named insured" is a Partnership), or acquires the voting rights of such an amount of such securities; or

CERTIFIED POLICY COPY

8/1/2017 2:32:05 PM

2014 POLICY 38

BPM 3107CW 0613

3. A General Partner of the "named insured" (in the event the "named insured" is a partnership) withdraws, resigns or is terminated;

Q. "Whistleblower law" means a statute, rule or regulation, which protects an employee against discrimination from his or her employer, if the employee discloses or threatens to disclose to a superior or any governmental agency; or who gives testimony relating to, any action with respect to the employer's operations, which may be a violation of public policy as reflected in legislation, administrative rules, regulations or decisions, judicial decisions, and professional codes of ethics.

R. "Wrongful employment act(s)" means any actual or alleged:

1. Wrongful dismissal, discharge or termination (either actual or constructive), including breach of an implied contract;

2. Harassment or coercion (including sexual harassment, whether quid pro quo, hostile work environment or otherwise);

3. Discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

4. "Retaliation" (including lockouts);

5. Employment-related misrepresentation(s) to "your" "employee" or applicant for employment with "you";

6. Employment-related libel, slander, humiliation, mental anguish, infliction of emotional distress, defamation, or invasion of privacy;

7. Wrongful failure to employ or promote;

8. Wrongful deprivation of career opportunity, wrongful demotion or negligent "employee" evaluation, including the giving of negative or defamatory statements in connection with an "employee" reference;

9. Wrongful discipline;

10. Failure to provide or enforce adequate or consistent corporate policies and procedures relating to any "wrongful employment act";

11. Negligent supervision or hiring by an "insured", relating to any of the above;

12. Violation of an individual's civil rights relating to any of the above.

CERTIFIED POLICY COPY

8/1/2017 2:32:06 PM

2014 POLICY 39

**BUSINESSOWNERS**
**BPM 3110  1207**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION — EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section II – Liability** is amended as follows:

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3. A reinforced or unreinforced base coat;

4. A finish coat providing surface texture to which color may be added; and

5. Any flashing, caulking or sealant used with the system for any purpose.

CERTIFIED POLICY COPY

8/1/2017 2:32:06 PM

2014 POLICY 40

BUSINESSOWNERS
BPM 3112 1207

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT — AGGREGATE LIMITS OF INSURANCE (PER PREMISES)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**Section II — Liability** is amended as follows:

Under **Paragraph D.4.b  Liability And Medical Expenses Limits Of Insurance**, the aggregate limit for all "bodily injury" and "property damage" other than "bodily injury" or "property damage" included in the "products-completed operations hazard" applies separately to each of the premises owned by or rented to you.

CERTIFIED POLICY COPY

8/1/2017 2:32:07 PM

2014 POLICY 41

BUSINESSOWNERS
BPM 3113  1207

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED PERSONAL PROPERTY AND LOST KEYS OF OTHERS
## (LIABILITY)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Subject to the provisions of the **Businessowners Coverage Form Section II - Liability,** the following is made part of this policy:

As respects your work, Section **B, Exclusions k(3), k(4)** and **n.** are amended as follows:

**k. (3)** Property loaned to you;

**k. (4)** Personal property in the care, custody or control of the insured:

This exclusion does not apply to loss or damage of personal property in your care, custody or control and caused by you in your business.

**n.** "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use or to lost keys of others loaned to you in your business.

As respects your work, Section **C. Who is an Insured,** is amended as follows:

Paragraph **2.a.(2)(b)** does not apply to loss or damage to personal property in your care, custody or control and caused by you in your business.

Section **D. Liability and Medical Expenses Limit of Insurance** is amended by adding the following:

(5) The limit of insurance for property damage to personal property of others resulting from your business is $5,000 each "occurrence", $10,000 aggregate.

(6) The limit of insurance for lost keys of others loaned to you or in your care, custody or control in your business is $1,000 each "occurrence", $2,500 aggregate.

The limit of insurance applies only to the actual cost of the keys, the cost to adjust the locks to accept new keys, and the cost of new locks, including their installation.

The above coverage and limits of liability are subject to a deductible of $250 each "occurrence".

BPM 3113  1207

Page 1 of 1

CERTIFIED POLICY COPY

8/1/2017 2:32:08 PM

2014 POLICY 42

MAIN STREET AMERICA ASSURANCE COMPANY

**BUSINESSOWNERS**
**BPM D 3107CW 0613**

| Named Insured: | FRIEL PLASTERING & STUCCO INC | Policy Number: | MPU5515L |
|---|---|---|---|
| Agent Name: | PETERSON INSURANCE SERVICES | Effective Date: | 01-01-14 |

Agent No.    371461

## EMPLOYMENT PRACTICES LIABILITY INSURANCE
## COVERAGE ENDORSEMENT - SUPPLEMENTAL DECLARATIONS

### NOTICE

- THIS IS A CLAIMS-MADE AND REPORTED COVERAGE. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THIS EPL COVERAGE IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS EPL COVERAGE RESTRICT COVERAGE. PLEASE READ THE ENTIRE EPL COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

- THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS UNDER THIS EPL COVERAGE SHALL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS. AMOUNTS INCURRED FOR DEFENSE COSTS SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

| | | |
|---|---|---|
| EPL Coverage Period: | From: 01-01-2014 <br> To: 01-01-2015 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy |
| EPL Aggregate Limit of Liability: | $50,000 | Annual aggregate for all "loss" combined, including "defense costs". |
| EPL Deductible Amount: | $5,000 | For "loss" arising from claims or suits alleging the same "wrongful employment act" or "related wrongful employment acts". |
| EPL Retroactive Date: | 01-01-2014 | If no date is shown, "we" will consider the EPL Retroactive Date to be the date of organization of the "named insured". The EPL Retroactive Date will remain the same through all subsequent renewals. No change will be made to the EPL Retroactive Date unless at the sole request of the insured. |
| EPL Coverage Premium: | INCLUDED | EPL Premium for the EPL Coverage Period |
| | TOTAL EPL COVERAGE PREMIUM: | INCLUDED |

This insurance does not apply to "loss" arising out of a "wrongful employment act" that arises out of incidents or circumstances of which "you" had knowledge prior to the effective date of this EPL Coverage or the first EPL Coverage Form issued by "us" of which this EPL Coverage is an uninterrupted renewal.

BPM D 3107CW 0613

8/1/2017 2:32:09 PM

BPM 5122 0613

# Pennsylvania Changes

This endorsement changes the policy.  Please read it carefully.

This endorsement modifies insurance provided under the following:

EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE

**SECTION VI. CONDITIONS**, Clause **F. Extended Reporting Periods**, Paragraph **2.b.** is replaced by the following:

**b.** Upon payment of an additional premium of 100% of the full annual premium applicable to this EPL Coverage, a Supplemental Extended Reporting Period of one (1) year immediately following the effective date of cancellation or nonrenewal in which to give to "us" written notice of "claims" first made or "suits" first brought against the "insureds" during said Supplemental Extended Reporting Period for any "wrongful employment acts" occurring before the end of the "EPL coverage period" and are otherwise covered by this EPL Coverage.

To obtain the Supplemental Extended Reporting Period, "you" must request it in writing and pay the additional premium due, within sixty (60) days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If "we" do not receive the written request as required, "you" may not exercise this right at a later date.

This insurance, provided during the Supplemental Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Supplemental Extended Reporting Period becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

BPM 5122 0613

Page 1

CERTIFIED POLICY COPY

8/1/2017 2:32:09 PM

2014 POLICY 44

**BUSINESSOWNERS**
**BP 01 42 01 06**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A. Section I — Property** is amended as follows:

1. The following is added to Paragraph **E.5. Loss Payment** Property Loss Condition and supersedes any provision to the contrary:

   **NOTICE OF ACCEPTANCE OR DENIAL OF CLAIM**

   1. Except as provided in **3.** below, we will give you notice, within 15 working days after we receive a properly executed proof of loss, that we:

      **a.** Accept your claim;

      **b.** Deny your claim; or

      **c.** Need more time to determine whether your claim should be accepted or denied.

      If we deny your claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

      If we need more time to determine whether your claim should be accepted or denied, the written notice will state the reason why more time is required.

   2. If we have not completed our investigation, we will notify you again in writing, within 30 days after the date of the initial notice as provided in **1.c.** above, and thereafter every 45 days. The written notice will state why more time is needed to investigate your claim and when you may expect us to reach a decision on your claim.

   3. The notice procedures in **1.** and **2.** above do not apply if we have a reasonable basis, supported by specific information, to suspect that an insured has fraudulently caused or contributed to the loss by arson or other illegal activity. Under such circumstances, we will notify you of the disposition of your claim within a period of time reasonable to allow full investigation of the claim, after we receive a properly executed proof of loss.

2. The following is added to any provision which uses the term actual cash value:

   Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind or quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained a partial or total loss or damage.

   The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

**B. Section III — Common Policy Conditions** is amended as follows:

1. Paragraph **A. Cancellation** is replaced by the following:

   **A. Cancellation**

   1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

   2. **Cancellation Of Policies In Effect For Less Than 60 Days**

      We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

   3. **Cancellation Of Policies In Effect For 60 Days Or More**

      If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

      **a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

**BP 01 42 01 06**                    © ISO Properties, Inc., 2004                    Page 1 of 3     □

CERTIFIED POLICY COPY

**8/1/2017 2:32:10 PM**

2014 POLICY 45

b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

2. Paragraph **K. Transfer Of Your Rights And Duties Under This Policy** is replaced by the following:

**K. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

If you die, this Policy will remain in effect as provided in **1.** or **2.** below, whichever is later:

1. For 180 days after your death regardless of the policy period shown in the Declarations, unless the insured property is sold prior to that date; or

2. Until the end of the policy period shown in the Declarations, unless the insured property is sold prior to that date.

Coverage during the period of time after your death is subject to all provisions of this policy including payment of any premium due for the policy period shown in the Declarations and any extension of that period.

© ISO Properties, Inc., 2004

BP 01 42 01 06   ☐

CERTIFIED POLICY COPY

8/1/2017 2:32:11 PM

2014 POLICY 46

3. The following paragraphs are added and supersede any provisions to the contrary:

**M. Nonrenewal**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

**N. Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

CERTIFIED POLICY COPY

8/1/2017 2:32:12 PM

2014 POLICY 47

BUSINESSOWNERS
BP 01 91 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

| **Instruction to Policy Writers** |
| --- |
| Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania. |

BP 01 91 07 02                    © ISO Properties, Inc.,  2001                    Page 1 of 1        □

CERTIFIED POLICY COPY

8/1/2017 2:32:13 PM

2014 POLICY 48

BUSINESSOWNERS
BP 04 17 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B. Exclusions** in **Section II - Liability:**

This insurance does not apply to:

1. "Bodily injury" or "personal and advertising injury" to:

   a. A person arising out of any:

      (1) Refusal to employ that person;

      (2) Termination of that person's employment; or

      (3) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   b. The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(1)**, **(2)** or **(3)** above is directed.

2. This exclusion applies:

   a. Whether the insured may be liable as an employer or in any other capacity; and

   b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

BP 04 17 07 02                    © ISO Properties, Inc.,  2001                    Page 1 of 1       □

CERTIFIED POLICY COPY

8/1/2017 2:32:13 PM

2014 POLICY 49

BUSINESSOWNERS
BP 04 54 01 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEWLY ACQUIRED ORGANIZATIONS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to Paragraph **C. Who Is An Insured** in **Section II – Liability:**

3. Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Paragraph **A.1. Business Liability** does not apply to:

   (1) "Bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   (2) "Personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

© ISO Properties, Inc., 2004

CERTIFIED POLICY COPY

8/1/2017 2:32:14 PM

2014 POLICY 50

POLICY NUMBER: MPU5515L

BUSINESSOWNERS
BP 04 97 01 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

## SCHEDULE

| Name Of Person Or Organization: |
|---|
| As required by written contract or written agreement provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Paragraph **K. Transfer Of Rights Of Recovery Against Others To Us** in **Section III – Common Policy Conditions** is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

© ISO Properties, Inc., 2004

CERTIFIED POLICY COPY

8/1/2017 2:32:15 PM

2014 POLICY 51

BUSINESSOWNERS
BP 05 17 01 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – SILICA OR SILICA-RELATED DUST

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following exclusion is added to Paragraph **B. Exclusions** in **Section II – Liability:**

**B. Exclusions**

This insurance does not apply to:

**SILICA OR SILICA-RELATED DUST**

1. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

2. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

3. "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

4. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions** in **Section II – Liability:**

1. "Silica" means silicon dioxide, (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

BP 05 17 01 06                    © ISO Properties, Inc., 2005                    Page 1 of 1    ☐

CERTIFIED POLICY COPY

8/1/2017 2:32:16 PM
2014 POLICY 52